PARTIDO POPULAR DEMOCRÁTICO, recurrido, *v.* CARLOS ROMERO BARCELÓ, GOBERNADOR DE PUERTO RICO, recurrente, GERINELDO BARRETO PÉREZ, ADMINISTRADOR GENERAL DE ELECCIONES, recurrido.

*Números:* R-81-118, O-81-150

*Resueltos:* 27 de marzo de 1981

*Héctor Urgell Cuevas,* abogado del Honorable Gobernador de Puerto Rico, recurrente; *Córdova, Subirá, Gaztambide & Arrillaga,* abogados de los interventores y apelantes, y *Guillermo Mojica Maldonado,* abogado del Partido Popular Democrático.

San Juan, Puerto Rico, a 27 de marzo de 1981

En auxilio de nuestra jurisdicción y hasta nueva orden, quedan suspendidos los efectos de la sentencia recurrida así como todos los términos establecidos en la legislación objeto del pleito.

Lo acordó el Tribunal y certifica el Secretario. El Juez Asociado Señor Negrón García emitió voto concurrente.

(Fdo.) Ernesto L. Chiesa

*Secretario*

—O—

Voto concurrente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 27 de marzo de 1981

Concurrimos con la paralización de los procedimientos. Nos explicamos.

La parte dispositiva de la sentencia del ilustrado tribunal de instancia, aquí impugnada, provee que los demandados, "Hon. Gobernador de Puerto Rico y Hon. Administrador General de Elecciones, deberán tomar las medidas pertinentes para que en la elección especial a celebrarse para llenar la vacante surgida en el Distrito Representativo Núm. 31, sólo participen candidato[s] y *electores* afiliados al Partido Popular Democrático". (Bastardillas nuestras.) Ello, como veremos, significa que se le está dando erróneamente carácter de primarias a un evento comicial en el cual tiene derecho a votar todo el electorado de ese distrito representativo.

I

Para comprender y resolver el enigma jurídico que se plantea sobre cuál es el procedimiento vigente en ley para llenar las vacantes que surjan en los cargos de senador o representante de un distrito nominado originalmente y electo por un partido político, es necesario exponer sus antecedentes

históricos. Adelantamos que la norma sustantiva que gobierna actualmente esta situación lo es el Art. 5.006 de la Ley Electoral de Puerto Rico aprobada el 20 de diciembre de 1977 (16 L.P.R.A. sec. 3206), la cual oportunamente analizaremos.

Retrocediendo a principios de siglo, advertimos que la Ley Orgánica Foraker —en vigor desde el año 1900— no regulaba expresamente el asunto de las vacantes y lo dejaba en manos de la Cámara de Delegados. (Sec. 29.) A partir del 1902 entra en vigor el Código Político, que en su Art. 209 preceptuaba:

Siempre que ocurra una vacante, ó deje de confirmarse la elección de una persona á causa de un empate de votos en la Cámara de Delegados, *el Gobernador deberá desde luego convocar á una elección para cubrir la vacante,* con ocho días por lo menos de anticipación. (Bastardillas nuestras.)

El 2 de marzo de 1917, en virtud de la Ley Jones se deroga lo anterior, y en su Art. 30 se fija:

En caso de ocurrir vacantes entre los miembros del Senado o en la Cámara de Representantes, *podrán celebrarse elecciones especiales en los distritos en que ocurrieren dichas vacantes,* de acuerdo con las reglas que se prescribieren por ley. . . . (Bastardillas nuestras.)

Por enmienda introducida a la Ley Jones en 1938, ese procedimiento sufre un cambio: desde entonces se cubrieron por nombramiento del Gobernador, a propuesta de la dirección central del partido al cual pertenecía el legislador. (Art. 30, según ley del Congreso aprobada en 1ro de junio de 1938.)

Con el advenimiento de nuestra Constitución el 25 de julio de 1952, se produce nuevamente un cambio. La Sec. 8 del Art. III disponía que el Gobernador convocaría, "dentro de los treinta días siguientes a la fecha en que se produzca la vacante, *a elección especial en dicho distrito,* la cual habrá de celebrarse no más tarde de noventa días después de convocada, y la persona que resulte electa en dicha elección especial

ocupará el cargo hasta la expiración del término de su antecesor". Además disponía:

Cuando dicha vacante ocurriere en el transcurso de una sesión legislativa, o cuando la Asamblea Legislativa o el Senado fueren convocados para una fecha anterior a la certificación del resultado de la elección especial, el presidente de la cámara correspondiente nombrará a la persona recomendada por el organismo directivo central del partido a que pertenecía el Senador o Representante cuyo cargo quedó vacante, para que ocupe el cargo hasta que se certifique la elección del candidato que resulte electo. Cuando la vacante ocurra dentro de los quince meses anteriores a una elección general, o cuando ocurra en el cargo de un Senador o un Representante por Acumulación, se cubrirá por el presidente de la cámara correspondiente, a propuesta del partido político a que pertenecía el Senador o Representante cuyo cargo estuviese vacante, con un candidato seleccionado en la misma forma en que lo fue su antecesor. La vacante de un cargo de Senador o Representante por Acumulación electo como candidato independiente, se cubrirá por elección en todos los distritos.

Esa mecánica continuó prevaleciendo hasta que mediante referéndum constitucional de 3 de noviembre de 1964 se enmendó, en lo pertinente, así:

*Cuando surja una vacante en el cargo de Senador o Representante por un distrito, dicha vacante se cubrirá según se disponga por ley.* Cuando la vacante ocurra en el cargo de un Senador o un Representante por Acumulación, se cubrirá por el Presidente de la Cámara correspondiente, a propuesta del partido político a que pertenecía el Senador o Representante cuyo cargo estuviese vacante, con un candidato seleccionado en la misma forma en que lo fue su antecesor. La vacante de un cargo de Senador o Representante por Acumulación electo como candidato independiente, se cubrirá por elección en todos los distritos. (Bastardillas nuestras.)

El debate legislativo que precedió el texto de esta enmienda (R. Conc. de la C. 12) indica que en la Cámara se estimó que: "la Resolución e[ra] clara, es como disponga la

Asamblea Legislativa por ley. No estamos discutiendo la ley. Estamos discutiendo la proposición de enmienda a la Constitución. Y la proposición de enmienda es, será como la Legislatura de Puerto Rico disponga por ley". *Diario de Sesiones*, (Cámara) Vol. 18, pág. 1163 (1964). En el Senado se visualizó que era a los efectos de eliminar el requisito de elección y permitir, como una alternativa, que la vacante fuera cubierta a petición del partido a quien pertenecía el cargo. *Diario*, *op. cit.*, (Senado), 1224. Esta intención quedó diáfanamente plasmada en la Ley Núm. 91 de 26 de junio de 1965, que preceptuaba una designación directa "por el presidente de la cámara correspondiente, a propuesta del partido político a que pertenecía el Senador o Representante cuyo cargo estuviese vacante, con un candidato seleccionado en la misma forma en que lo fue su antecesor".

Recapitulando, tanto histórica como constitucionalmente, una vacante como la que nos ocupa, en la tradición democrática puertorriqueña, ha sido cubierta a base de dos métodos: (i) a través de una elección en el referido distrito; y (ii) nombrado a propuesta del partido al cual pertenecía el asiento que resulte vacante. Una sinópsis gráfica lo ilustra así:

| AÑO | MÉTODO | CUERPO LEGAL |
|---|---|---|
| 1902–1917 | Elección | —Código Político de P.R. |
| 1917–1938 | Elección | —Ley Orgánica Jones |
| 1938–1952 | Nombrado a propuesta del Partido | —Enm. Ley Jones |
| 1952–1964 | Elección | —Constitución E.L.A. de P.R. |
| 1964–1977 | Nombrado a propuesta del Partido | —Enm. Constitución, y Ley Núm. 91 de 26 de junio de 1965 |

## II

Según anticipamos, la anterior Ley Núm. 91 fue derogada por el estatuto que actualmente rige la materia electoral, el 20 de diciembre de 1977. Por ser medular a la solución de la controversia, lo transcribimos totalmente:

Siempre que ocurriere una vacante en un cargo de Senador o Representante electo *como candidato independiente* por un distrito o cuando ocurriere una vacante al cargo de un Senador o de un Representante *por un distrito nominado* por un partido *antes* de los quince (15) meses precedentes a la fecha de la próxima elección general, el Gobernador, previa consulta con la Comisión, convocará, dentro de los treinta (30) días siguientes a la fecha en que se produzca la vacante, para la celebración de una *elección especial* en el distrito afectado por la vacante surgida. Dicha elección deberá llevarse a cabo no más tarde de los noventa (90) días siguientes a la fecha de su convocatoria y la persona que resulte electa en la misma ocupará el cargo hasta la expiración del término de su antecesor.

Si dentro de los sesenta días siguientes a la fecha de la vacante el partido al cual pertenecía el legislador del escaño vacante no presenta una *candidatura* para llenar el mismo, se considerará el escaño como si fuere el de un legislador independiente a los fines de la celebración de la elección especial para llenarlo.

En caso que el cargo vacante correspondiere a un candidato independiente, cualquier elector afiliado a un partido político o persona debidamente cualificada como elector y que reúna los requisitos que el cargo en cuestión exige, podrá presentarse como candidato en dicha elección.

Cuando ocurriere una vacante en el cargo de Senador o Representante por Acumulación que hubiere sido nominado por un partido, o cuando dentro de los quince (15) meses precedentes a una elección general, ocurriere una vacante en el cargo de Senador o Representante de distrito, se cubrirá la misma por el Presidente de la Cámara correspondiente, a propuesta del partido político a que perteneciere dicho Senador o Representante con una persona seleccionada en la misma forma en que lo fue su antecesor. 16 L.P.R.A. sec. 3206.

La lectura y reflexión de esta disposición legal pone de manifiesto que no está exenta de obscuridad. Ciertamente adolece de claridad y no es el mejor ejemplo de redacción. Resulta, pues, inevitable, que haya dado margen a diversas interpretaciones y que jurídicamente, en el ejercicio de nuestra facultad rectora constitucional, debamos aclarar su alcance. Veamos.

El primer párrafo: (a) establece *la necesidad* de una elección especial de surgir alguna vacante en el puesto de senador o representante por distrito nominado por un partido político; (b) cuando no procede elección alguna —quince meses antes de las próximas elecciones generales; y (c) contiene una serie de términos para que el Gobernador *convoque y celebre la elección. Elección Especial* no es sinónimo de *primarias*, pues el Art. 5.007 que le sigue visualiza que "[v]otarán en una elección especial todos los electores de la demarcación geográfica en que la misma deba celebrarse, con derecho a ello conforme la convocatoria al efecto emitida por el Gobernador de Puerto Rico". 16 L.P.R.A. sec. 3207. Resultaría un contrasentido que por un lado puedan participar todos los electores del distrito concernido, y que se estimara ello unas primarias, cuyo concepto requiere la participación exclusiva de los electores miembros de un partido en particular. Art. 1.003 (37). 16 L.P.R.A. sec. 3003 (37).

En resumen, del primer párrafo se desprende que el Gobernador de Puerto Rico *tiene un deber ministerial* de convocar a una *elección especial* para cubrir las vacantes que surgen en los cuerpos legislativos, cuando dicha vacante es por un distrito representativo. Dicha convocatoria debe ser hecha dentro de los 30 días siguientes a la fecha en que se produzca la vacante. Por interacción de las definiciones estatutarias, la convocatoria a elección especial excluye el concepto limitado de primarias; puede participar todo el electorado.

El segundo párrafo —que ha dado génesis a tantas dudas— reconoce el derecho de los partidos políticos que ob-

tienen el triunfo en el distrito representativo del escaño vacado, a tener la oportunidad de llenarlo. A tal efecto, la ley requiere a ese partido que dentro de los sesenta días siguientes a la fecha de la vacante presente una "candidatura" para llenar el mismo. Varias observaciones despejan la incertidumbre. La palabra clave "candidatura", que según el Art. 1.003 (7) de la Ley Electoral, 16 L.P.R.A. sec. 3003 (7), se define como *"el total de candidatos de un partido político que figuren en la papeleta electoral en la columna correspondiente* a tal partido". Advertimos que el legislador acuñó un término preciso atado en su alcance a varios candidatos del partido político que ostentaba el escaño. Pudo muy bien referirse a "un candidato" pero no lo hizo, manifestando de ese modo una intención. Recuérdese que cuando hablamos de "elección", hay que presumir que son varios los candidatos; para poder elegir, tiene el elector que tener más de una opción. Este enfoque queda reforzado si examinamos este segundo párrafo reestructurando el deber impuesto de la forma negativa a una forma positiva:

Si dentro de los sesenta días siguientes a la fecha de la vacante el partido al cual pertenecía el legislador del escaño vacante [no] presenta una candidatura para llenar el mismo, [no] se considerará el escaño como si fuere el de un legislador independiente a los fines de la celebración de la elección especial para llenarlo.

Forzoso es concluir que es el partido político afectado por la vacante quien tiene derecho a cubrirla mediante la presentación de una candidatura en tiempo. Presentada la misma, no cabe estimar que pueden nominarse otros candidatos desafiliados a ese partido para participar en la elección.

El párrafo *tercero* del estatuto nos explica llanamente las consecuencias de que el partido político al cual pertenecía el escaño no haya presentado una candidatura dentro de esos 60 días, y tiende a corroborar lo expuesto. A tal efecto, se considerará el escaño como si fuera un legislador *indepen-*

*diente*, en cuyo caso, "cualquier elector afiliado a un partido político o persona debidamente cualificada como elector y que reúna los requisitos que el cargo en cuestión exige, *podrá presentarse como candidato en dicha elección*". (Bastardillas nuestras.) *A contrario sensu*, de optar el partido político por presentar al electorado su candidatura, *no* podrán postularse otros electores afiliados a distintos partidos o independientes.

Finalmente, el *cuarto* párrafo cubre la situación cuando la vacante surge dentro de los 15 meses precedentes a una elección general, y establece que se cubrirá por el Presidente de la Cámara correspondiente, a propuesta del partido político a que pertenecía el que causa la vacante. Muy fácilmente se percibe la diferencia estatuida cuando la Asamblea Legislativa trató sobre una vacante *antes* de los quince meses precedentes a una elección general, como en el caso de autos, a cuando acontece dentro de los 15 meses precedentes a tal elección general. Esta disimilitud nos da una fuerte base para sostener, como hemos concluido, la obligación del Gobernador de convocar a una elección especial en el Distrito Representativo Núm. 31 sin que pueda prescindirse de la misma mediante una nominación directa del partido envuelto, en que se somete un solo candidato.

Esta elección especial, según nuestra interpretación, irrestricta en cuanto al electorado, tiene la particularidad de que es para sustituir una vacante que pertenecía a un partido político, al cual la propia ley le confiere la facultad de presentar, en primer orden, a *sus* candidatos y de no hacerlo, abrir la contienda a otros partidos y electores. Conceptualmente el Legislador ha podido mantener un balance entre los intereses democráticos en conflicto sin sacrificar la esencia de uno ni del otro.

## III

Resumiendo, con referencia a la solicitud de auxilio de jurisdicción del recurrente, Gobernador de Puerto Rico, Ro-

mero Barceló, luego de analizar integralmente todas las disposiciones de ley pertinentes, somos de opinión. que procede, pues el modo de llenar la vacante acaecida en el cargo de Representante del Distrito Número 31, básicamente requiere el siguiente trámite:

(1) Convocatoria por el Gobernador dentro de 30 días a *elecciones especiales*. Adviértase que una elección especial es un término distinto al de primarias, Art. 5.006 (16 L.P.R.A. sec. 3206);

(2) En esas elecciones especiales participarán, según la ley, *todos* los electores del distrito correspondiente, Art. 5.007 (16 L.P.R.A. sec. 3207);

(3) Si a los sesenta (60) días siguientes a la vacante el partido al cual pertenecía el Legislador del escaño no presenta una *candidatura* (que significa *"el total de candidatos de un partido político* que figuren en la papeleta electoral en la columna correspondiente a tal partido", Art. 1.003(7), 16 L.P.R.A. sec. 3003(7), la elección especial cesa de estar restringida a candidatos exclusivos de ese partido, pudiendo presentarse como candidato cualquier elector independiente o afiliado a otro partido político.

Jurídicamente estamos convencidos de que esta interpretación armoniza el lenguaje un tanto confuso del estatuto y constituye la fórmula conciliatoria y ecléctica concebida por nuestra Asamblea Legislativa de reconocer el derecho de *todo elector* —inclusive el de los interventores— de participar, a la par que el del partido político afectado, de retener, en primera oportunidad, la vacante y, por ende, la composición numérica inicial en la Legislatura conforme a los trascendentales principios constitucionales envueltos.

A tono con lo expuesto, concurrimos con la paralización de los efectos de la sentencia recurrida, aunque estimamos que deben adoptarse las siguientes medidas de cautela:

a) La celebración de una inscripción de electores en el

Distrito Representativo Núm. 31 para que oportunamente participen en esa elección;

b) Si el Partido Popular Democrático interesa ejercitar la opción reconocida por la ley, en o antes del 29 de marzo, debe presentar su candidatura para llenar esa vacante. Sobre este extremo, tomamos conocimiento judicial de que cuatro electores participaron en unos procedimientos internos con intención de ser candidatos al cargo vacante. En la medida en que la ley no autoriza esos trámites, como tampoco primarias, sino la mecánica explicada en esta ponencia, la candidatura legal a ser presentada a todo el electorado en esta elección especial debe consistir de esos cuatro (4) aspirantes.

## IV

A manera de epílogo y en nuestro deber de juzgar casos políticamente matizados, debemos recordar que la promoción de la independencia del poder judicial como factor preeminente y esencial de equilibrio en nuestra estructura democrática —Canon XIII de Ética Judicial— sitúa al juez en un precario estado de indefensión, compeliéndolo a menudo a renunciar al derecho innegable que tiene a ". . . defenderse de ataques abusivos a su persona o a su honra". *Id.* (i). Aun así, la rectitud de una conciencia justa, íntegra y equitativa no sufre menoscabo ni se desvía ante la adversidad de los tiempos, la animosidad, la persecución o la infame acción concertada conspiratoria, sean de origen privado o público. Ese espíritu inexpugnable, rasgo tradicional y definitorio de la judicatura puertorriqueña, mantiene irreductible su moral y ecuanimidad a base de la fuerza dimanante de la dignidad ética del silencio, pues, "[l]a experiencia indica que la maledicencia es un hábito pobre, de valor humano negativo y de inferior valor social que puede muchas veces alcanzar a personas de probada integridad contra quienes se desee echar a rodar, por la fantasía de las gentes muchas veces y otras por la maldad, inventivas como si fueran realidades, y falsías

como si fueran verdades". *In re Jackson Sanabria*, 97 D.P.R. 1, 34 (1969) —opinión disidente.