EL MUNICIPIO DE AGUADILLA, representado por su Alcalde JOSÉ BADILLO NIEVES, demandante y apelante, *v.* HON. ANTONIO FERNÓS ISERN, COMISIONADO DE SANIDAD DE PUERTO RICO, y JUAN ACEVEDO, REGISTRADOR DEMOGRÁFICO DE AGUADILLA, demandados y apelados.

Núm. 8902.—*Sometido:* Junio 6, 1944. *Resuelto:* Julio 14, 1944.

*F. Fernández Cuyar* y *Enrique González Mena*, abogados del apelante; *Hon. Procurador General Interino Jesús A. González*, y *Carmen B. Hernández, Procurador Auxiliar*, abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Esta es una petición de *injunction* interpuesta por el Municipio de Aguadilla, representado por su Alcalde, contra el Comisionado de Sanidad y el Registrador Demográfico de Aguadilla. El remedio solicitado es que se prohiba a los demandados sacar los libros de los antiguos registros civiles de dicho municipio que se encuentran en la alcaldía. El demandante ha apelado de la sentencia de la corte de distrito desestimando su petición.

La cuestión fundamental a determinar en este caso es si existe alguna base para la contención del municipio de que el Comisionado carece de autoridad para ordenar la remoción de los libros del antiguo registro de la alcaldía del municipio a cualquier sitio dentro del Municipio de Aguadilla. La determinación de esta cuestión exige un examen minucioso de la reglamentación estatutaria de los registros demográficos en Puerto Rico.

En 1911 la Legislatura estableció los registros civiles en todos los municipios de Puerto Rico. Estos registros estaban a cargo de los secretarios municipales, bajo la inmediata inspección de los alcaldes. A tenor con esta ley los secretarios municipales expedían copias certificadas de los asientos contenidos en los libros bajo su custodia. Estas ofi-

cinas funcionaban, en resumen, como dependencias munici-
pales (Ley núm. 61, Leyes de Puerto Rico, 1911, pág. 197).

La Ley núm. 24, Leyes de Puerto Rico, 1931 (pág. 229)
que deroga expresamente la Ley núm. 61 de 1911, estableció
un sistema para el registro demográfico completamente dife-
rente. Se creó un Registro General Demográfico de Puerto
Rico, a ser establecido en el Negociado de Estadística Demo-
gráfica del Departamento de Sanidad. Se le asignó al De-
partamento todo lo concerniente a la inscripción de los naci-
mientos, casamientos y defunciones y se le impuso el deber
de preparar todas las instrucciones e impresos referente a
los mismos. La ley dispone que el Departamento ''procurará
que los mismos sean registrados en cada distrito primario
de registro . . . '', y ''El Comisionado de Sanidad cuidará de
que esta Ley sea observada y aplicada uniformemente en . . .
Puerto Rico.'' (Artículo 3). La ley también dispone que
''Cada Municipio . . . constituirá un distrito primario de re-
gistro . . . '' (Artículo 4) y que ''En cada distrito primario
de registro habrá un Registrador de Estadística Demográfica
el que será nombrado por el Alcalde . . . con la aprobación
de la Asamblea Municipal . . . '' (Artículo 5).

En términos generales, la Ley núm. 24 de 1931 puso la
maquinaria y el funcionamiento del Registro General bajo el
Comisionado de Sanidad. Sin embargo, subsistieron ciertos
vestigios del viejo sistema operado por el municipio. Por
ejemplo, como hemos visto, los registradores continuaban
siendo nombrados por los alcaldes. Y toda vez que los regis-
tradores continuaban con nombramiento municipal, la Legis-
latura dispuso en el artículo 32 de la Ley núm. 24, ''que todas
las actas de nacimiento, casamiento y defunción que hayan
ocurrido o se haya celebrado en Puerto Rico con anterioridad
a la fecha de la vigencia de esta ley, quedarán en los archivos
de los respectivos municipios bajo la custodia del secretario
municipal, quien, a petición de parte interesada, expedirá co-
pias certificadas de las mismas mediante el pago . . . de un
derecho . . . que ingresará en el tesoro municipal.'' Obvia-

mente era lógico que la Legislatura dispusiera que los antiguos libros del registro "quedarán en los archivos de los respectivos municipios", si iban a continuar bajo la custodia del secretario municipal, quien también era el funcionario con poder para expedir copias certificadas de tales asientos.

La Ley núm. 28, Leyes de Puerto Rico, 1935, Sesión Extraordinaria (pág. 163), fué considerablemente más lejos con miras a la centralización del registro de estadística demográfica en las manos del Comisionado de Sanidad. La Ley núm. 28 traspasó al Comisionado el poder de nombrar y remover a los registradores. También disponía "que las oficinas de los registradores demográficos serán establecidas en las Unidades y Subunidades de Salud Pública donde las hubiere y en las oficinas locales de sanidad en aquellos municipios donde no hubiere unidades; *Disponiéndose, además,* que los libros de los antiguos registros civiles, actualmente en poder de las autoridades municipales, quedan por la presente sometidos a la jurisdicción y autoridad del Comisionado de Sanidad de Puerto Rico, y permanecerán en los sitios que en la actualidad han sido destinados para sus archivos en los respectivos municipios, bajo la custodia inmediata de los registradores demográficos, quienes quedan por la presente autorizados para expedir copias certificadas de todos los actos que aparezcan inscritos en los mismos, mediante el pago por parte del solicitante de un derecho de cincuenta (50) centavos en sellos de rentas internas por cada copia certificada de cada nacimiento, casamiento o defunción."[1]

Así vemos que por primera vez se separa a los funcionarios municipales de toda conexión con los registros demográficos. Los registradores son nombrados y removidos por el Comisionado; las oficinas de registradores fueron trasladadas a las unidades de salud pública; los libros de los anti-

---

[1] Las enmiendas hechas a la Ley por la Ley núm. 99, Leyes de Puerto Rico, 1943, no arrojan luz al problema ante nos. Se refieren a la creación de un fondo especial de los derechos cobrados por los Registradores por las copias certificadas de los asientos, y otros asuntos que no están aquí envueltos.

guos registros civiles anteriormente en manos de las autoridades municipales son transferidos a la jurisdicción y autoridad del Comisionado y puestos bajo la inmediata custodia de los registradores; y los registradores—no los secretarios municipales—están autorizados para expedir copias certificadas de todos los asientos que surjan de los registros.

El Municipio, no obstante, insiste en que el lenguaje de la sección 1 de la Ley núm. 28 de 1935, que enmienda el artículo 5 de la ley—de que los libros de los antiguos registros civiles "permanecerán en los sitios que en la actualidad han sido destinados para sus archivos en los respectivos municipios, bajo la custodia inmediata de los registradores demográficos . . . " —significa que los referidos antiguos registros civiles deben continuar permaneciendo en las alcaldías de los respectivos municipios.

El municipio afirma que esta disposición ha subsistido a través de todas las enmiendas de la ley. Pero lo primero que notamos es que este lenguaje, empleado en la Ley núm. 28 de 1935, no es exactamente el mismo empleado en el artículo 32 de la Ley núm. 24 de 1931. Este claramente dispone que los antiguos libros "quedarán *en los archivos de los respectivos municipios* bajo la custodia del secretario municipal . . . ". (Bastardillas nuestras). Ya hemos visto la razón de dicha disposición: el registrador era un empleado municipal, y el secretario municipal expedía las copias certificadas. Pero el lenguaje de la Ley núm. 28 de 1935 es un poco diferente. El mandato terminante de la Ley núm. 24 fué cambiado para que leyese que los libros "permanecerán *en los sitios* que en la actualidad han sido destinados para sus archivos en los respectivos municipios, bajo la custodia inmediata de los registradores demográficos, quienes quedan por la presente autorizados para expedir copias certificadas . . . ". (Bastardillas nuestras).

No puede dudarse que el lenguaje de la Legislatura es oscuro (*inept*), y que hay considerable motivo para la con-

tención de que el lenguaje empleado en la Ley núm. 28 significa lo que el municipio alega que significa. Sin embargo, en manera alguna claramente dice eso, y representa un cambio del lenguaje que anteriormente disponía con claridad que los referidos libros permanecerían "en los archivos de los respectivos municipios". Al leerse a la luz de su raigambre histórica, el lenguaje envuelto es por lo menos ambiguo. Y de ser ambiguo, tenemos justificación en investigar el propósito del estatuto, en un esfuerzo para determinar lo que la Legislatura quiso decir con dicha fraseología. (*De Castro v. Junta de Comisionados,* 59 D.P.R. 676; Crawford, *Statutory Construction,* secciones 164-5, págs. 256-261; secciones 174-5, págs. 276-284).

Una vez resuelto que el lenguaje en cuestión es por lo menos ambiguo y es razonablemente susceptible de dos interpretaciones, no encontramos razón alguna dentro del actual estatuto para concluir que la Legislatura tuvo en mente proveer que los referidos antiguos libros de los registros civiles permanecerán en las alcaldías de sus respectivos municipios. En verdad, el propio apelante no asume esta posición. Sólo alega que el estatuto claramente así lo dispone. Pero toda vez que nada encontramos en la ley de 1935 que específicamente provea que estos libros permanecerán en las alcaldías, y siendo toda la teoría de la actual ley otorgar al Comisionado de Sanidad el control completo de los registros demográficos —el poder de nombrar y remover, la radicación de las oficinas de los registradores en edificios del Departamento, el situar bajo su jurisdicción y autoridad los antiguos libros, el poner la inmediata custodia de los antiguos libros bajo registradores cuyo nombramiento y remoción dependan del Comisionado y que son los únicos funcionarios autorizados hoy día a expedir copias certificadas de los asientos, todos señalan inequívocamente a esta dirección—resolvemos que la Legislatura por medio de este lenguaje un poco oscuro tuvo la intención de disponer que los referidos libros permanecerán dentro de

los límites de los municipios, pero no necesariamente en sus alcaldías.

*La sentencia de la corte de distrito será confirmada.*