SERGIO TORRES GARCÍA y OTROS, lesionados, ADMINISTRACIÓN DE LOS TRIBUNALES y OTROS, patronos, *v.* FONDO DEL SEGURO DEL ESTADO, asegurador-recurrente.

*Números:* O-80-351,  *Resueltos:* 30 de junio de 1981
O-80-514,
O-80-571,
O-80-618,
O-80-655

470

Antonio Acevedo Torres, abogado del recurrente Fondo del
Seguro del Estado; *Luis Negrón López* y *Luis Negrón*
*Lizardi*, abogados del recurrido Sergio Torres García; *Janice*
*M. Vélez Wampl* de Servicios Legales de Puerto Rico, Inc.,
abogada de la recurrida Juanita Nazario Sánchez; *Manuel de*
*Jesús Mangual*, abogado de los recurridos Samuel Rosario
Berríos, Celso Quiles Loucil, Raquel Ruiz Vélez, Adela Clau-
dio Román, Alberto Flores Olivieri y David Morris Newbay;
*Celina Romany*, abogada del recurrido Miguel Ramírez
Almandoz; *Francisco A. Rivera López*, abogado del recurrido
Guillermo Cruz Cruz; y *Blas R. Ferraiuoli Martínez*, abo-
gado de los recurridos Jorge L. Marrero Reyes, Carmen
Rodríguez y Carmelo León Hernández.

PER CURIAM:   La controversia común en los recursos de
epígrafe se reduce a determinar si bajo la Ley de Compen-
saciones por Accidentes del Trabajo, el Fondo del Seguro
del Estado está obligado o no a proveer tratamiento
médico adicional de *naturaleza paliativa o de sostén*, a los
obreros que se les ha otorgado incapacidad total y perma-
nente. Dicho organismo resolvió negativamente y la Comi-
sión Industrial decidió en la afirmativa y revocó.

■   A los fines de precisar su alcance es menester
tener presente que por *tratamiento paliativo o de sostén*, la

resolución de la Comisión considera aquel "utilizado para mitigar la violencia de las enfermedades crónicas e incurables, haciéndolas más llevaderas, así como aquel tratamiento necesario para mantener el status quo del paciente. Es aquel tratamiento que se brinda para aliviar el dolor y el sufrimiento o para mantener vivo al paciente. No se brinda con el propósito de reducir la incapacidad, ya que, se trata de una enfermedad o condición crónica e incurable y que hasta ese momento la medicina no ha descubierto una cura y/o no hay esperanza de rehabilitación. Como ejemplos de estos casos podemos señalar al paciente que sufre de una enfermedad crónica del corazón; al paciente que sufre de una enfermedad mental crónica; al paciente parapléjico; y, al paciente que necesita una operación quirúrgica que aliviará su dolor, pero no reducirá su incapacidad".

## I

Al presente los beneficios a que tiene derecho el obrero o empleado que sufra una lesión como resultado de un accidente del trabajo o enfermedad ocupacional están expresamente delimitados en el Art. 3 de la Ley, que establece "tres tipos [distintos] de beneficios . . . a saber: (1) asistencia médica y medicinas que le sean prescritas, incluyendo servicios de hospital cuando fuere necesario; (2) compensación durante el período de recuperación, mientras el obrero esté incapacitado para trabajar, que es lo que se ha dado en llamar 'dietas'; y (3) compensación 'adicional' por cualquier incapacidad permanente resultante, fuere de naturaleza parcial o total". *Rivera Rivera* v. *Comisión Industrial*, 101 D.P.R. 712, 716 (1973). (Escolio omitido.)

Es con referencia al primero de esos beneficios que se nos argumenta su ampliación hasta alcanzar tratamiento paliativo o de sostén. Tal proposición no procede. El texto legal autoriza "la asistencia médica y medicinas que le fueran prescritas, incluyendo servicios de hospital cuando

fuere necesario; pero cuando a juicio del Administrador del Fondo del Seguro del Estado tales servicios médicos o de hospital deban descontinuarse, el obrero o empleado podrá apelar ante la Comisión Industrial". (11 L.P.R.A. sec. 3.)

En *Ríos Rivera* v. *Comisión Industrial*, 108 D.P.R. 808, 814 (1979), explicamos el alcance del tratamiento médico cubierto por la Ley de Compensaciones por Accidentes del Trabajo en la forma siguiente:

> Reconocemos en la Ley de Compensaciones por Accidentes del Trabajo y los reglamentos adoptados para hacerla cumplir las siguientes circunstancias bajo las cuales el Fondo del Seguro del Estado debe proveer tratamiento médico a un empleado que esté lesionado o sufra alguna condición física o mental como consecuencia de su trabajo:
>
> (1) período de recuperación inicial, que es el que se inicia una vez el empleado se presenta para tratamiento luego de ocurrir un accidente del trabajo o cuando el empleado se queja por primera vez de alguna condición relacionada con su trabajo, y termina al ser dado de alta curado y sin incapacidad o porque se reconoce la existencia de una incapacidad permanente que no ha de mejorar con más tratamiento; 11 L.P.R.A. sec. 3; *Rivera Rivera* v. *Comisión Industrial*, supra;
>
> (2) período de recuperación por recidiva, que es cuando con posterioridad al período de recuperación inicial, el empleado sufre una recaída en su condición sin intervención de causa alguna ajena al accidente, y dicha recaída requiere tratamiento adicional; 11 L.P.R.A. sec. 3; 11 R.&R.P.R. sec. 3-4. Véase *Colbert* v. *Consolidated Laundry*, 107 A.2d 521 (1954); y
>
> (3) período de recuperación por agravación de una incapacidad preexistente, que es cuando con motivo de un segundo o subsiguiente accidente del trabajo, el empleado que ya padece una incapacidad parcial permanente, sufre una agravación de ésta y requiere tratamiento.

■ Observamos cómo el estatuto está concebido sobre una premisa contraria al tratamiento paliativo o de sostén. Ese beneficio no surge de la letra del estatuto como tam-

poco de la interpretación jurisprudencial, la cual al respecto reiteradamente ha resuelto que cuando, previo los dictámenes médicos, el Administrador llega a la conclusión de que la continuación del tratamiento no ha de resultar en la rehabilitación del obrero para el trabajo, procederá a darlo de alta y fijar la incapacidad y compensación correspondiente. Así lo intimamos con anterioridad al pronunciarnos: "El alta puede deberse a que el paciente ya está sanado y puede volver a trabajar, o a que ha resultado con una *incapacidad permanente* y se determina que su condición no ha de cambiar mediante tratamiento médico o quirúrgico adicional." (Énfasis nuestro.) *Rivera Rivera* v. *Comisión Industrial,* supra, pág. 717.

## II

El reclamo del derecho a tratamiento de sostén en distintas jurisdicciones de los Estados Unidos ha sido evaluado a base de si "beneficios médicos" incluye medidas paliativas. Aunque existen varios criterios, el predominante y decisivo se basa en la redacción o espíritu de la ley. Por lo general, cuando el estatuto habla de beneficios necesarios para "curar o aliviar", proceden las medidas paliativas, lo contrario resulta cuando se habla de "cura o rehabilitación". 2 Larson, *Workmen's Compensation Law,* Sec. 61.14, págs. 10-750–10-758 (1974).

En Puerto Rico el programa de compensaciones está apuntalado en un principio de naturaleza reparadora. Su interés primordial es la rehabilitación del obrero a fin de que se reintegre a la industria y continúe produciendo para su propio bien, el familiar y el de la sociedad en general. Inspirado en ese axioma, una vez el médico se cerciora de que no es necesario tratamiento médico adicional o que el continuar proveyéndolo no ha de reducir la incapacidad permanente con que ha quedado el obrero, procede a darle de alta. Adviértase pues, que nuestra Ley de Compensaciones por Accidentes del Trabajo es un estatuto de carácter reme-

dial o reparador —*Alonso García* v. *Comisión Industrial,* 102 D.P.R. 733, 735–736 (1974); *Vélez, Admor.* v. *Comisión Industrial,* 91 D.P.R. 480, 485 (1964); *Feliciano Figueroa* v. *Comisión Industrial,* 84 D.P.R. 196, 215, 216 (1961); *Villanueva Pérez* v. *Comisión Industrial,* 109 D.P.R. 790, 795 (1980)— y su propósito no es, como en el seguro ordinario de accidentes, compensar por daños, sino compensar por la limitación en la capacidad del obrero para trabajar y ganarse su sustento. *Alonso García* v. *Comisión Industrial,* 103 D.P.R. 183, 184 (1974); *Villanueva Pérez* v. *Comisión Industrial,* supra.

Ante estas consideraciones, en ausencia de un claro mandato legislativo nos resulta forzoso concluir que bajo nuestra Ley de Compensaciones por Accidentes del Trabajo no proceden los beneficios de tratamiento paliativo o de sostén. Aunque reconocemos que su Art. 2 nos brinda una regla de hermenéutica legislativa de carácter liberal, ello no autoriza al Poder Judicial subvertir el diseño básico del estatuto, ampliando sus beneficios a áreas y situaciones no contempladas originalmente; máxime desconociéndose el impacto económico que conllevaría en la industria privada y pública. Aunque simpatizamos con el planteamiento, reconocemos que éste es un asunto que versa eminentemente sobre las metas de la política fiscal y social que es provincia de la Asamblea Legislativa. Es ésta la que luego de considerar todos los factores envueltos incluyendo el impacto económico, que evidentemente es enorme, debe tomar la decisión final.

*Se dictará sentencia que revoque la resolución de la Comisión Industrial.*

El Juez Asociado Señor Negrón García emitió opinión disidente a la cual se une el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué. El Juez Asociado Señor Dávila no intervino.

—O—

Opinión disidente del Juez Asociado Señor Negrón García a la cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 30 de junio de 1981

Resolveríamos en la afirmativa la incógnita de si bajo la Ley de Compensaciones por Accidentes del Trabajo, el Fondo del Seguro del Estado está obligado o no a proveer tratamiento médico adicional de *naturaleza paliativa o de sostén*, a los obreros que se les ha otorgado incapacidad total y permanente. Dicho organismo resolvió negativamente y la Comisión Industrial en la afirmativa y revocó.

La resolución de la Comisión considera *tratamiento paliativo o de sostén*, aquel "utilizado para mitigar la violencia de las enfermedades crónicas e incurables, haciéndolas más llevaderas, así como aquel tratamiento necesario para mantener el status quo del paciente. Es aquel tratamiento que se brinda para aliviar el dolor y el sufrimiento o para mantener vivo al paciente. No se brinda con el propósito de reducir la incapacidad, ya que, se trata de una enfermedad o condición crónica e incurable y que hasta ese momento la medicina no ha descubierto una cura y/o no hay esperanza de rehabilitación. Como ejemplos de estos casos podemos señalar al paciente que sufre de una enfermedad crónica del corazón; al paciente que sufre de una enfermedad mental crónica; al paciente parapléjico; y, al paciente que necesita una operación quirúrgica que aliviará su dolor, pero no reducirá su incapacidad".

I

Bajo el texto de ley actual, los beneficios a que tiene derecho el obrero o empleado que sufra una lesión como resultado de un accidente del trabajo o enfermedad ocupacional están expresamente delineados en el Art. 3 del estatuto, el cual, en lo pertinente a tratamiento médico, establece

que todo obrero que sufriere lesiones o enfermedades ocupacionales tendrá derecho:

A la asistencia médica y medicinas que le fueren prescritas, *incluyendo servicios de hospital cuando fuere necesario;* pero cuando a juicio del Administrador del Fondo del Seguro del Estado tales servicios médicos o de hospital deban descontinuarse, el obrero o empleado podrá apelar ante la Comisión Industrial. (Énfasis nuestro.)

Lo primero que resalta de su lectura es que el artículo está redactado en términos generales, que sostiene una cubierta amplia y, a diferencia de otras jurisdicciones, no fija límite de tiempo durante el cual el obrero puede recibir tratamiento médico ni limita los desembolsos en que pueda incurrir el Fondo al proveer servicios médicos. Tampoco contiene lenguaje reconociendo o negando tratamiento paliativo o de sostén.

El Fondo sostiene que al presente la ley no contempla en forma alguna ese tipo de tratamiento. Su alegato se concentra básicamente en dos proposiciones, a saber, que otras disposiciones de ley limitan el tratamiento; y lo costoso que resultaría el proveerlo. En la primera proposición nos dice que la letra y el espíritu de la ley son indicativos que cuando —previo a los dictámenes médicos rendidos— el Administrador concluye que la continuación de tratamiento no ha de resultar en la rehabilitación del obrero para el trabajo, fijará la incapacidad resultante y, liquidada la compensación, quedará el caso cerrado para todos los fines pertinentes. En apoyo de esa contención nos remite al Art. 3a de la Ley, que en su segundo párrafo del inciso 6 establece:

Cuando el Administrador, previos los dictámenes médicos rendidos en cualquier caso, llegue a la conclusión de que ningún tratamiento adicional puede surtir el efecto de rehabilitar el paciente para el trabajo, procederá a fijarle el grado de incapacidad con que haya quedado, y liquidada la compensación *quedará el caso cerrado para todos los fines de ley.* De esta decisión podrá apelar el obrero, dentro de

treinta (30) días de serle notificada, para ante la Comisión Industrial. (Énfasis nuestro.)

Similarmente, el inciso 11 en su cuarto párrafo dispone:

> En todo caso en que el Administrador, previos los dictámenes médicos rendidos al efecto, llegue a la conclusión de que la continuación del tratamiento no ha de resultar en la rehabilitación del paciente para el trabajo, procederá a fijarle la incapacidad resultante, y la liquidación de la compensación otorgada surtirá el efecto de cerrar el caso para todos los efectos de ley. De esta decisión, podrá apelar el obrero, dentro de treinta (30) días de serle notificada, para ante la Comisión Industrial.

La dificultad de ese análisis es que el Art. 3a antes mencionado cubre una situación especial que por analogía no es susceptible de ser extendida a la cuestión que nos ocupa. Se refiere exclusivamente al derecho a compensación de aquellas personas que contraigan enfermedades del sistema respiratorio de origen tuberculoso en el curso de empleos en hospitales dedicados al cuidado de personas que padecen dicha enfermedad o en los laboratorios donde se maneja material infectado. En consecuencia, no podemos coincidir en que los términos de ese artículo afectan los derechos en general de los obreros según consignados en el Art. 3.

Aclarado ese extremo, es menester examinar los antecedentes del Art. 3 antes citado. La determinación final de si autoriza o no el tratamiento paliativo o de sostén, dependerá de la intención o propósito del legislador al promulgarlo.

Primeramente cabe apuntar que el texto sobre asistencia médica se ha mantenido inalterado desde el año 1935 en que se aprobó el estatuto por vez primera denominado Ley de Compensaciones por Accidentes del Trabajo. Ley Núm. 45 de 18 de abril de 1935. Esa pieza legislativa derogó expresamente la Ley de Indemnizaciones por Accidentes del Trabajo, Núm. 85 de 14 de mayo de 1928, la

cual en lo referente a los derechos de los obreros establecía en su Sec. 3 que tendrían derecho "[a] la asistencia médica, alimentos y medicinas que le fueren prescritos, incluyendo servicios de hospital cuando fuere necesario". Este lenguaje correspondía a su predecesor derogado, Ley de Indemnizaciones por Accidentes del Trabajo del 25 de febrero de 1918. Ambas leyes —1918 y 1928— al igual que en la anterior del 13 de abril de 1916 tomaban como punto de partida y limitaban los beneficios de medicinas y alimentos a partir de la fecha en que fuera concedida una indemnización por razón de incapacidad parcial o total permanente motivada por el accidente de trabajo. Desde entonces la legislación guarda absoluto silencio y, por ende, suprimió tales limitaciones.

No existe historial legislativo alguno a donde en función auxiliadora de hermenéutica podamos acudir. No obstante resulta ser útil y de aplicación la regla de interpretación de estatutos en el sentido de que existiendo una ley que limite una situación y sea derogada por otra de igual finalidad, que guarde silencio en cuanto a ese respecto, (1) procede asumir que el legislador interesaba eliminar tal limitación. Como consecuencia, hemos de concluir que del historial de la ley no puede colegirse interpretación que limite de forma alguna los derechos de hospitalización y medicinas a un obrero lesionado por accidente o enfermedad ocupacional. Por el contrario, su evolución la refuerza.

La anterior interpretación no es incompatible con pronunciamientos anteriores, en particular los expuestos en

(1) También se presume que cuando el legislador cambia el lenguaje y la fraseología de un estatuto a través de enmienda, tuvo la intención de introducir una nueva regla, de llevar a cabo distintos propósitos y resultados, de establecer cambios y de apartarse de las normas que surgen del estatuto enmendado. *El Estado ex rel. Lektrich* v. *Ydrach,* 77 D.P.R. 41, 45 (1954). Véanse también *Municipio* v. *Fernós, Com.,* 63 D.P.R. 978, 982-983 (1944); *Blanco Fresno & Cía., S. en C.* v. *Royal Ins. Co.,* 47 D.P.R. 277, 280 (1934); *Descartes, Tes.* v. *Tribl. Contrib., y Sucn. Serrallés,* 71 D.P.R. 471, 478-479 (1950); *Cordero, Auditor* v. *Tribl. de Distrito,* 72 D.P.R. 378, 383-389 (1951).

*Ríos Rivera* v. *Comisión Industrial,* 108 D.P.R. 808, 814 (1979). Allí dijimos:

*Reconocemos en la Ley de Compensaciones por Accidentes del Trabajo y los reglamentos adoptados para hacerla cumplir las siguientes circunstancias bajo las cuales el Fondo del Seguro del Estado debe proveer tratamiento médico a un empleado que esté lesionado o sufra alguna condición física o mental como consecuencia de su trabajo:*

(1) período de recuperación inicial, que es el que se inicia una vez el empleado se presenta para tratamiento luego de ocurrir un accidente del trabajo o cuando el empleado se queja por primera vez de alguna condición relacionada con su trabajo, *y termina al ser dado de alta curado y sin incapacidad o porque se reconoce la existencia de una incapacidad permanente que no ha de mejorar con más tratamiento;* 11 L.P.R.A. sec. 3; *Rivera Rivera* v. *Comisión Industrial,* supra;

(2) período de recuperación por recidiva, que es cuando con posterioridad al período de recuperación inicial, el empleado sufre una recaída en su condición sin intervención de causa alguna ajena al accidente, y dicha recaída requiere tratamiento adicional; 11 L.P.R.A. sec. 3; 11 R.&R.P.R. secs. 3–4. Véase *Colbert* v. *Consolidated Laundry,* 107 A.2d 521 (1954); y

(3) período de recuperación por agravación de una incapacidad preexistente, que es cuando con motivo de un segundo o subsiguiente accidente del trabajo, el empleado que ya padece una incapacidad parcial permanente, sufre una agravación de ésta y requiere tratamiento. (Énfasis nuestro.)

Véase además *Rivera Rivera* v. *Comisión Industrial* 101 D.P.R. 712, 717 (1973), en que señalamos:

El alta puede deberse a que el paciente ya está sanado y puede volver a trabajar, o a que ha resultado con una incapacidad permanente y se determina que su condición no ha de cambiar mediante tratamiento médico o quirúrgico adicional.

Esas manifestaciones hay que evaluarlas a la luz de las controversias allí planteadas. No perseguían limitar el

derecho de asistencia médica al momento en que se reconociera la existencia de una incapacidad permanente y se concediera la compensación correspondiente. Allí limitamos el derecho al pago de dietas, pues equivaldría a una doble paga disponer del pago de las mismas y al mismo tiempo, pagar la compensación adicional por razón de incapacidad permanente.

## II

Aunque no es determinante, sí es persuasivo el enfoque brindado en otras jurisdicciones de los Estados Unidos a la cuestión que nos ocupa. La tónica la resume Larson en las siguientes expresiones:

> Hay más de un criterio respecto a si los beneficios médicos incluyen *medidas paliativas que sólo sirven para prevenir dolor y molestia una vez se ha perdido toda esperanza de cura.* La gran mayoría de las jurisdicciones permite dichos beneficios, pero una minoría los niega. *El resultado depende, en parte, de la redacción del estatuto.* Donde la ley permite pagos extendidos para la "cura o rehabilitación", se ha resuelto que la diatermia para aliviar el dolor en un caso en el que no hay esperanza de mejoría o cura no se podía incluir bajo los beneficios médicos. . . . *Pero en ausencia de lenguaje específico, se ha resuelto que se podían pagar gastos durante toda la vida del paciente en busca de alivio aun cuando no hubiera posibilidad de cura.* Un modo de lograr este resultado es adoptando la optimista actitud del Tribunal Supremo de Florida, que de hecho dictaminó que "mientras haya vida, hay esperanza". 2 Larson *Workmen's Compensation Law,* Sec. 61.14, págs. 10-750–10-756 (1974). (Énfasis nuestro.)

Siguiendo ese razonamiento inclinamos la balanza hacia el obrero e interpretamos que la ley está redactada en términos generales y carece de lenguaje específico en cuanto a restringir tratamiento médico alguno. Siempre hemos concebido ese estatuto con una cubierta amplia, humanista y de vanguardia social, reconocedor de derechos y beneficios. La aspiración original y el espíritu legis-

lativo que animaron su redacción quedarían menoscabados si al dar de alta a un obrero lo dejáramos desamparado y desvalido, cuando precisamente la incapacidad total permanente emanó de un accidente del trabajo. Sería contrario al espíritu de la ley dejarlo sin tratamiento médico alguno por la simple razón de que no ha de mejorar su condición. No sólo la lógica, sino la conciencia judicial se manifiestan en contra de obligar al obrero de ese modo a gastar su compensación en el resto del tratamiento, incurrir en gastos de su propio pecunio, o que se convierta en una carga para otras instituciones públicas hospitalarias del Estado. Ello tiende a subvertir el diseño legislativo básico.

Aun desde el punto de vista del posible impacto económico —una alza futura en las primas— debemos descartar la posición del Fondo. Ese enfoque no toma en cuenta que el plan legislativo presupone que el peso pecuniario recae sobre todo patrono y no en la parte física y monetariamente más frágil. Únicamente así damos virtualidad a la regla de hermenéutica que nos legó el legislador en el Art. 2 de la Ley, de interpretar liberalmente hacia el obrero sus disposiciones.

Dictaríamos sentencia disponiendo que el Fondo del Seguro del Estado es responsable de brindar ese tratamiento al obrero en los casos meritorios.